2014 ND 164

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Justin YARBRO, Defendant and Appellant.**

**No. 20130311.**

Supreme Court of North Dakota.

July 31, 2014.

Mark J. McCarthy, Assistant State's Attorney, Grand Forks, N.D., for plaintiff and appellee.

Jay D. Knudson, Grand Forks, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Justin Yarbro appeals from a criminal judgment entered after a jury found him guilty of continuous sexual abuse of a child and from an order denying his motion for a new trial. We conclude that Yarbro's failure to object to the admission of DNA evidence during trial and in his motion for a new trial precludes him from raising arguments on appeal about the admission of that evidence and that the district court did not abuse its discretion in denying his motion for a new trial on the ground of juror misconduct. We affirm.

I

[¶ 2] In February 2012, the State charged Yarbro with continuous sexual abuse of a child, alleging that between April 2010 and October 2011, he willfully engaged in three or more sexual acts or sexual contact with a child under the age of fifteen years. Law enforcement officers obtained one pair of underwear from the complainant during an interview with her at a hospital in October 2011, and the

complainant's mother collected four pair of the complainant's underwear from a residence shared with Yarbro. The state crime lab tested the underwear and reported no semen was detected on any of the underwear, but Yarbro could not be excluded as a source of DNA found on two pair of the underwear.

[¶ 3] Yarbro moved to suppress the complainant's underwear and the results of the DNA tests on the underwear. He argued the evidence was not relevant because the complainant's mother collected the underwear from his residence and there was no way to ensure the DNA evidence on the underwear was not tainted by an inadvertent secondary transfer of his DNA. After an evidentiary hearing, the district court denied Yarbro's motion to suppress:

> The issues that are brought up in this motion to suppress really have to do with the DNA, and that's a question of fact for the jury. The issue of transferability of DNA will most likely depend on the testimony of an expert witness. The absence of semen, the absence of sperm, and the transferability are all questions of fact. The weight of the evidence is a question of fact for the jury to find in this case, since they are the fact finders. Also, considering all of the evidence in this case, the DNA does have some probative value. It's relevant, and there's no evidence here that it's outweighed by the prejudicial nature.

> I think the question—the issue can probably be renewed at trial if there isn't enough testimony or if an expert says—the expert from the State says this is certainly transferable, but I think we have all kinds of issues for experts to testify on in this case; so I'm going to deny the motion.

[¶ 4] At trial, during the direct examination of Amy Gebhardt from the state crime lab, the State introduced into evidence a lab report with the findings and analysis of Gebhardt, who testified that Yarbro could not be excluded as a source of DNA evidence found in two pair of underwear. The record does not reflect Yarbro objected to the admission of that evidence at trial. A jury thereafter found Yarbro guilty of continuous sexual abuse of a child.

[¶ 5] Yarbro moved for a new trial, alleging juror misconduct during jury selection and jury deliberations. He claimed one of the empaneled jurors, S.G., failed to inform the parties during jury selection about her prior education and professional licensure as a social worker. Yarbro submitted a juror affidavit stating that during deliberations S.G. said "that child victims of sexual abuse get frequent urinary tract infections and constipation" and "that she has a degree in social work and that is what she knows." Yarbro claimed S.G.'s statements provided the jury with impermissible extraneous evidence. After denying Yarbro's motion for a continuance of the hearing on his motion for a new trial, the district court denied Yarbro's motion for a new trial. The court determined Yarbro failed to establish S.G. failed to honestly answer questions during jury selection, the juror's affidavit was inadmissable under N.D.R.Ev. 606(b), and even if S.G.'s claimed statement was extraneous information, there was no reasonable possibility the statement could have affected the verdict because the same information was presented to the jury during the testimony of Dr. Arne Graff.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. Yarbro's appeal is timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const.

art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

[¶ 7] Yarbro argues the district court erred in denying his motion to suppress the results of the DNA tests on the complainant's underwear. He claims the evidence was not relevant and the probative value of the evidence was outweighed by the danger of unfair prejudice.

[¶ 8] In the context of the denial of a defendant's pretrial motion to exclude evidence, this Court has said the defendant must renew the objection at trial so the court can take appropriate action, and the defendant's failure to object at trial constitutes a waiver. *State v. Thompson*, 2010 ND 10, ¶ 19, 777 N.W.2d 617; *State v. Buchholz*, 2004 ND 77, ¶ 9, 678 N.W.2d 144; *State v. Anderson*, 2003 ND 30, ¶ 7, 657 N.W.2d 245. The district court's denial of Yarbro's pretrial motion contemplated reconsideration of the evidentiary issue when it was presented in the context of trial, and the record reflects Yarbro did not renew his objection at trial when the results of the DNA tests were admitted into evidence during Gebhardt's testimony. By failing to properly object at trial, Yarbro failed to preserve this issue for appellate review.

[¶ 9] This Court has also held that although a motion for a new trial is not necessary to preserve issues for appellate review, when a new trial is sought, a defendant is limited on appeal to the grounds presented to the district court in the motion for a new trial. *State v. Hernandez*, 2005 ND 214, ¶ 34, 707 N.W.2d 449; *State v. Jordheim*, 508 N.W.2d 878, 880–81 (N.D. 1993). Yarbro did not raise this evidentiary issue in his motion for a new trial, and he has not preserved it for appellate review.

[¶ 10] We conclude Yarbro is precluded from raising this evidentiary issue on appeal, because he failed to renew his objection when the evidence was admitted during trial and because he failed to raise the issue in his motion for a new trial.

## III

[¶ 11] Yarbro argues the district court erred in denying his motion for a new trial based on juror S.G.'s failure to disclose information during jury selection and on S.G.'s statements during jury deliberations. Yarbro also argues the court erred in denying his request to continue the hearing on his motion for a new trial to procure the presence of a juror to testify about S.G.'s statements during deliberations. The State responds the district court did not abuse its discretion in denying Yarbro's request to continue the hearing on his motion for a new trial and also argues the court did not abuse its discretion in denying his motion for a new trial, because the juror affidavit pertained to internal jury deliberations and there was no evidence S.G. withheld information during jury selection.

### A

[¶ 12] Under N.D.R.Ct. 6.1(b), a motion for continuance "shall be promptly filed as soon as the grounds therefor are known and will be granted only for good cause shown, either by affidavit or otherwise." We will not reverse a district court's decision to deny a continuance absent an abuse of discretion. *State v. Hilgers*, 2004 ND 160, ¶ 38, 685 N.W.2d 109. A district court abuses its discretion if its decision is arbitrary, unreasonable, or capricious, or if it misinterprets or misapplies the law. *State v. Stoppleworth*, 2003 ND 137, ¶ 6, 667 N.W.2d 586.

[¶ 13] After the jury found Yarbro guilty of continuous sexual abuse of a child

on April 5, 2013, one of the empaneled jurors told Yarbro's counsel on April 8, 2013, about S.G.'s statements during deliberations. On April 16, 2013, Yarbro submitted a juror affidavit with a motion for a new trial and a request for a hearing on the motion. In June 2013, a hearing on the motion for a new trial was scheduled for August 16, 2013. In a motion dated July 31, 2013, and filed on August 6, 2013, Yarbro asked the district court to allow the averring juror to appear telephonically at the hearing because that juror was in New York through September. On August 15, 2013, the court denied Yarbro's request for a telephonic appearance by the juror, stating Yarbro had adequate notice of the hearing date and adequate time to arrange for the presence of his witnesses or to timely request a continuance. On August 15, 2013, Yarbro moved for a continuance, claiming his witness was unavailable. The district court denied Yarbro's motion for a continuance, noting the belated nature of his motion and determining it lacked good cause and was not timely in view of when the hearing had been scheduled. The court also explained any further delay would violate the victim's right to a prompt disposition of the case under N.D.C.C. § 12.1–34–02(13). *See also* N.D.C.C. § 12.1–35–05 (court shall consider and give weight to adverse impact continuance may have on child victim in criminal case).

[¶ 14] We conclude the district court provided a reasoned explanation for its denial of Yarbro's motion for a continuance and its decision was not arbitrary, unreasonable, or capricious, or a misinterpretation or misapplication of the law. We therefore conclude the court did not abuse

its discretion in denying Yarbro's motion for a continuance.

B

[¶ 15] Yarbro argues the district court erred in denying his motion for a new trial.

[¶ 16] Rule 33(b), N.D.R.Crim.P., authorizes a defendant to move for a new trial on the basis of jury misconduct and requires the motion to be supported by an affidavit. We will not reverse a district court's denial of a motion for a new trial on the ground of juror misconduct unless the court has abused its discretion. *State v. Hidanovic,* 2008 ND 66, ¶ 11, 747 N.W.2d 463; *State v. Brooks,* 520 N.W.2d 796, 798 (N.D.1994).

[¶ 17] In considering whether to grant a new trial on the ground of juror misconduct, a district court must determine whether there was misconduct and, if so, whether the misconduct could have affected the verdict of a hypothetical average juror. *Brooks,* 520 N.W.2d at 798. The analysis of juror misconduct under N.D.R.Crim.P. 33(b) requires consideration of N.D.R.Ev. 606(b), which deals with jurors' competency to testify about the grounds for setting aside a verdict, and as relevant to Yarbro's 2013 prosecution, provided: [1]

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's

---

1. Rule 606, N.D.R.Ev., was amended effective March 1, 2014, in response to the 2011 revision of the Federal Rules of Evidence. *See* N.D.R.Ev. 606, explanatory note. The 2014 amendments changed the organization and style of the rule with no intent to substantively change the rule. *Id.*

mental processes in connection therewith. However, a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, (3) whether the verdict of the jury was arrived at by chance, or (4) where there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

[¶ 18] Rule 606(b), N.D.R.Ev., generally prohibits a juror from testifying about matters or statements occurring during the course of a jury's deliberations. Under N.D.R.Ev. 606(b), however, " 'jurors may testify regarding the receipt of extraneous prejudicial information by the jury or improper outside influence, but they may *not* testify to its subjective effect on the verdict or on their individual deliberations.' " *Hidanovic*, 2008 ND 66, ¶ 13, 747 N.W.2d 463 (quoting *Keyes v. Amundson*, 343 N.W.2d 78, 85 (N.D.1983)). "An attempt to use juror affidavits to demonstrate how the jury arrived at its decision falls precisely within the confines of the rule prohibiting impeachment of the jury verdict." *Andrews v. O'Hearn*, 387 N.W.2d 716, 719 (N.D.1986). The purpose of N.D.R.Ev. 606(b) is to preserve the finality of verdicts, to protect the privacy and integrity of jury deliberations, and to prevent jury harassment and maintain public confidence in the jury system. *Brooks*, 520 N.W.2d at 799; *Andrews*, at 719–20. Rule 606(b), N.D.R.Ev., embodies a balance between the desire for finality and certainty on one hand and the need to achieve an acceptable level of fairness and accuracy on the other hand, and if a verdict is the result of extraneous prejudicial information or outside influence, the balance favors fairness and accuracy. *Brooks*, at 799.

[¶ 19] In *Hidanovic*, 2008 ND 66, ¶¶ 14–16, 747 N.W.2d 463, this Court discussed use of juror affidavits to establish the existence of extraneous prejudicial information or outside influence in the context of a claim of juror statements about racial and ethnic bias during deliberations and concluded a district court did not abuse its discretion in denying a defendant's motion for a new trial on the ground of the claimed juror misconduct:

In *Brooks*, 520 N.W.2d at 799 (quoting *State v. Poh [*116 Wis.2d 510*]*, 343 N.W.2d 108, 117 (Wis.1984)), we said an underlying theory for allowing a juror to testify about extraneous prejudicial information or outside influence is that the jury's decision should be based only upon evidence and arguments presented in an adversarial context in open court:

"When a jury considers facts in a criminal case which have not been introduced as evidence, the defendant has been deprived of the opportunity to be present when evidence is being presented, to be represented by counsel at an evidentiary proceeding during trial, to cross-examine the 'witnesses' who presented the evidence, to offer evidence in rebuttal, to request curative instructions, or to take other tactical steps, including argument to the jury, to place the evidence in perspective for the jury."

We recognized, however, jurors must draw upon their own accumulated background knowledge and experiences, including matters of human nature, commercial affairs, and everyday life, but jurors' accumulated background knowledge and personal experiences " '[do] not include communication from one juror to another of objective extrinsic facts

regarding the criminal defendant or his alleged crimes.'" (Emphasis omitted). *Brooks*, at 799–800 (quoting *United States v. Howard*, 506 F.2d 865, 867 (5th Cir.1975)).

. . . .

If a losing party establishes the existence of extraneous prejudicial information or outside influence, the prevailing party has the burden of showing the losing party could not have been prejudiced by the information or influence under an objective standard that requires a district court to decide whether there is a reasonable possibility the verdict of a hypothetical average juror would be affected. *Brooks*, 520 N.W.2d at 801; *Keyes*, 343 N.W.2d at 85–86. In evaluating the effect of the information or the influence on a hypothetical average jury, we outlined the following criteria for consideration by a district court:

"[The] probable effect is estimated in light of the importance of the issue to which the information or influence related, the nature of the information or influence, the strength of the admitted evidence supporting the verdict, the number of jurors exposed to the information or influence, when the jury was exposed to the information or influence, how long the jury discussed these matters during deliberations, the manner in which the court dealt with the information at trial, and any other matters which logically might have a bearing on the effect of the information or influence on the jury."

*Brooks*, at 801 (quoting 27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6075, at 469–71 (1990)).

[¶ 20] In *Hidanovic*, 2008 ND 66, ¶ 28, 747 N.W.2d 463, this Court held the district court did not abuse its discretion in denying a motion for a new trial based on claimed juror statements of racial and ethnic bias during deliberations. We recognized the district court had the opportunity to observe the entire proceedings and instructed the jury to decide the case on the evidence received during trial. *Id.* We also recognized the juror's statements in that case were the type that ordinarily would have been discoverable during jury selection, and if the juror had been untruthful during jury selection, a new trial may have been warranted. *Id.*

[¶ 21] Yarbro argues that during jury selection, S.G. failed to disclose her education in social work and previous experience as a licensed social worker in Minnesota from 2003 through 2005, when counsel asked the prospective jurors, "Anyone in the jury panel a social worker? . . . Anyone married to a social worker? . . . Anybody who has a close family member in your immediate family who is a social worker?" He claims S.G. did not disclose relevant information about herself that would have been cause to excuse her from the jury, and the issue may not be ignored simply because she was not a licensed social worker when the jury was empaneled.

[¶ 22] Counsel may have been attempting to discover the jurors' educational and work background, but the questions were not properly phrased to obtain that information. This Court has recognized "[c]areful questioning during voir dire helps preserve the balance of the policies of finality and certainty with a fair and accurate result while also providing a method to handle jurors who are not honest during voir dire." *Hidanovic*, 2008 ND 66, ¶ 28, 747 N.W.2d 463. In denying Yarbro's motion for a new trial, the district court said there was no evidence S.G. is a social worker or is married to a social worker. The court explained Yarbro's allegation of misconduct for failure to correctly respond to questions during jury selection was not supported by the record.

On this record, we conclude the court did not abuse its discretion in determining there was no evidence S.G. provided false information during jury selection.

■ [¶ 23] The claimed extraneous information provided by S.G. during jury deliberations involved a statement that child victims of sexual abuse frequently get urinary tract infections and constipation. The district court found that the information in the juror's affidavit involved statements during the deliberation process and not extraneous information and that the juror's affidavit was precluded by N.D.R.Ev. 606(b). The court also determined the information purportedly provided to the jury was testified to during trial by Dr. Graff and the statement could not have reasonably affected the verdict. Although S.G.'s purported statement may have given some additional credibility to Dr. Graff's testimony, the district court was in the best position to assess the potential impact of the statement described in the affidavit. We conclude the court did not act arbitrarily, unreasonably, or capriciously, or misinterpret or misapply the law in determining the statement in the juror's affidavit involved internal statements made during jury deliberations and could not have reasonably affected the verdict. We therefore conclude the court did not abuse its discretion in denying Yarbro's motion for a new trial.

## IV

[¶ 24] We affirm the judgment and the order denying Yarbro's motion for a new trial.

[¶ 25] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.